S98A1261. LAMB et al. v. NATIONSBANK, N. A. et al.
S98A1262. LAMB et al. v. NATIONSBANK, N. A. et al.
S98A1264. FREDLUND v. NATIONSBANK, N. A. et al.
(507 SE2d 457)

HINES, Justice.

This is an appeal from a decision of the Probate Court of Chatham County in an action for declaratory judgment brought by NationsBank, N. A. to determine the beneficiaries of a trust established under the Last Will and Testament of Herschel V. Jenkins.[1] The will was executed in 1955, approximately five years before Jenkins died. The portion of the will in controversy is Item III. (4.) which provides:

Upon the death of my last surviving daughter, the corpus of my estate is to be divided into two (2) equal parts, one of the parts to be immediately paid over and delivered to my nieces and nephews then living. In the event of the death of any of

[1] NationsBank, N. A., successor by corporate merger to The Citizens and Southern National Bank, is executor under the will.

my nieces and nephews leaving children, the share of the parent shall be paid over and delivered to such children or their legal guardians. In the event at the time of the distribution herein before provided for, any of my nieces and nephews are indebted to me or to my estate, the amount of such indebtedness shall be deducted from the share which would go to such niece or nephew, or to his or her children.

The probate court found that the trust was intended to be distributed to a class consisting of the testator's nieces and nephews, or their children, living at the death of the testator's last surviving daughter, Victoria Jenkins, who died on July 4, 1997. Deceased children of a deceased niece or nephew, and their estates, were determined not to have rights in the trust. We agree that the will provision contains this condition of survivorship, and affirm.[2]

1. Appellants contend that the probate court's construction of the will provision is contrary to Georgia law which favors the early vesting of remainders and constitutes a rewriting of the will in contravention of the testator's express intent. But the contentions are without merit.

It is clear that the law favors the vesting of remainders in all cases of doubt. OCGA § 44-6-66;[3] *Lemmons v. Lawson*, 266 Ga. 571, 573 (1) (468 SE2d 749) (1996), citing *Patterson v. Patterson*, 208 Ga. 17 (1) (64 SE2d 585) (1951). However, in this case, as in others, "in which the discussion proceeds as if the problem were merely whether the remainder is vested or contingent, the real question involved is simply whether there is a requirement that a certain devisee must survive until his interest becomes possessory; it being conceded that he has not so survived." *Johnson v. Wishard*, 227 Ga. 355, 356 (1) (180 SE2d 738) (1971). Here, the will provision at issue requires that the takers be living at the time of distribution, which is at the death of the testator's last surviving daughter. It explicitly states that the

---

[2] The testator's nephew John Jenkins, Sr. died on March 12, 1965, leaving two children: John Jenkins, Jr. and Meredith Jenkins Lamb. John Jenkins, Jr. survived Victoria Jenkins, but Meredith Jenkins Lamb died on September 29, 1982. Ms. Lamb left two surviving children: John Clay Lamb and David Lamb, as well as a surviving spouse, Robert Lamb. The children's appeal is Case No. S98A1261. Robert Lamb's appeal is Case No. S98A1262.

The testator's niece Maude Alice Cubbedge Berry died on February 17, 1996, leaving one child, Lynn Berry Fredlund. Ms. Fredlund died testate on September 17, 1996; the personal representative of Ms. Fredlund's estate is her husband, Dale E. Fredlund. He filed a motion to intervene asserting the estate's right to any interest of Ms. Fredlund in the trust. Ms. Fredlund's surviving son Erik Fredlund was among the persons described in NationsBank's petition as a potential beneficiary. Dale E. Fredlund's appeal on behalf of Ms. Fredlund's estate is Case No. S98A1264.

Appellee John Jenkins, Jr. stands to receive a distribution under Item III. (4.) of Herschel V. Jenkins' will.

[3] This preference for vesting was also found in former Ga. Code Ann. § 85-708.

corpus of the trust is to be immediately paid over and delivered to nieces and nephews *then living*. Thus, it begins with an express condition of survivorship. That this survivorship requirement continues is evident from the testator's very specific language. In the event of the death of a niece or nephew *leaving children* the share of the parent is to be paid over and delivered to their *children or legal guardians*. It does not provide that the parent's share be paid to the *parent's estate* or *heirs* or to the *children's estate or heirs* or to *grandchildren* or *issue* or *descendants* or to any enlarged or more general group of recipients. The popular and legal sense of the word *children* ordinarily includes only the first generation of offspring, and in the absence of a showing that a larger signification is intended, the courts will not find that other descendants are included. *Trust Co. Bank v. Heyward*, 240 Ga. 557, 564 (3) (242 SE2d 257) (1978). Also, the will directs that the share of the parent is at that time to be paid over and delivered to the children or their legal guardians, and it follows that a person must be living in order to have something *paid over* or *delivered* to him. What is more, the reference to legal guardians demonstrates that the testator contemplated that the children would be in life.

The testator's intent that the children, i.e., the grandnieces and grandnephews, also be living at the time of distribution in order to take the parent's share is further evident by looking to the will as a whole and by scrutinizing every phrase that it contains. *Patterson v. Patterson*, 208 Ga. at 20 (1). Careful examination of the will in its entirety reveals two striking features supporting the finding that survivorship at the time of distribution is required: The testator's scheme to ultimately control the disposition of the trust assets and the testator's manifest intent that his estate benefit only those persons and entities known and dear to him and over which he had some manner of influence.

The testamentary scheme evidences the clear intent for the testator, who was a prominent Savannah businessman, to retain control of the corpus of the trust. The testator gave his own daughters only life estates and permitted them to encroach upon the corpus to the limited extent of $40,000. He also provided for payments to his sisters in the amount of $150 per month, but only for so long as they were living. He then expressly imposed a condition of survivorship on his nieces and nephews, therefore, refusing to allow them to posthumously control an interest in his estate. Thus, it would defy logic that the testator would deny control to those closest to him and then permit those more distant, and of succeeding generations, to posthumously direct his assets. *Trust Co. Bank v. Heyward*, supra at 560 (1).

The charitable bequests in the will also reflect the testator's desire to maintain control and to benefit only those interests with

which he felt a personal connection. A Savannah college was to receive $1,000 per year, but only so long as the college operated as a local one. The bequest was subsequently amended by codicil when the college joined the state university system, and the recipient of the bequest became a Savannah high school bearing the testator's name; the high school was to continue to receive the money only so long as the school was named after the testator. Another recipient of a yearly bequest was the local boys club, with which the testator's nephew was very involved, and which eventually bore the nephew's name. The remainder of the income from one-half of the corpus of the testator's estate was to go to a locally-centered community services organization with the proviso that if there was no local agency performing like services for the charitable agencies of Savannah, the money was to be paid to other selected worthy Savannah charitable organizations.

Thus, it is difficult to conceive that the testator would have intended a scheme that would allow his property to more easily pass outside his interests and possibly even outside his bloodline. Moreover, there is the legal assumption that one would rather have property pass within the bloodline than diverted to others. *Trust Co. Bank v. First Nat. Bank,* 246 Ga. 222, 224 (2) (271 SE2d 141) (1980). The fact that the testator failed to add the words "then living" in referring to grandnieces and grandnephews does not defeat the testator's manifest intent to impose a condition of survivorship at the time of distribution. See *Davant v. Shaw,* 206 Ga. 843 (59 SE2d 500) (1950).

2. Appellants are equally unsuccessful in their assertion that the probate court improperly treated the dispositions as a class gift requiring a per capita distribution. The court simply used the word "class" to describe the group of persons who would be eligible to take under the will, that is, those who survived the testator's last surviving daughter. There is no indication that the term is meant to quantify or define the scope of the interests the beneficiaries are to receive.

3. Inasmuch as the testator's intent was clear from the will itself, consideration of extrinsic evidence resulted in no harm to appellants.

*Judgment affirmed. Benham, C. J., Fletcher, P. J., Hunstein, Carley, Thompson, JJ., and Judge Jackson Bedford concur. Sears, J., disqualified.*

DECIDED NOVEMBER 23, 1998 —
RECONSIDERATION DENIED DECEMBER 18, 1998.

*McLanahan & Comolli, John M. Comolli,* for appellants (case nos. S98A1261 and S98A1262).

*Oliver, Maner & Gray, Julian R. Friedman, Lee A. Summerford,*

*Terri M. Yates,* for appellants (case no. S98A1264).

*Hunter, MacLean, Exley & Dunn, M. Lane Morrison, Roland B. Williams, Alston & Bird, G. Conley Ingram, Robert D. McCallum, Jr., John C. Sawyer, Ellis, Painter, Ratterree & Bart, Paul W. Painter,* for appellees.